**UNITED STATES of America,**

v.

**Lawrence J. ROMANO.**

**CR No. 95–10222–MAP.**

United States District Court,
D. Massachusetts.

June 21, 1996.

Michael O. Jennings, Springfield, MA, for Defendant.

Nadine Pellegrini, U.S. Attorney's Office, Boston, MA, for the U.S.

*MEMORANDUM AND ORDER REGARD-*
*ING DEFENDANT'S MOTION AND*
*AMENDED MOTION TO SUPPRESS*
*EVIDENCE AND FOR FRANKS*
*HEARING*

(Docket Nos. 17 & 36)

PONSOR, District Judge.

On January 26, 1995, this court issued a search warrant authorizing agents of the United States Fish and Wildlife Service to conduct a search of the residence of the defendant Lawrence J. Romano on Plantain Pond Road in Mt. Washington, Massachusetts. This search netted evidence which the Government alleges supports its charge against the defendant of violation of 16 U.S.C. §§ 3372 *et seq.,* known as the Lacey Act. The Lacey Act prohibits interstate transportation of illegally taken game.

At oral argument on April 8, 1996, the Government did not contest the defendant's claim that he was entitled to an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to probe the veracity of the allegations made in the affidavit supporting the search warrant application. In particular, the defendant contends that Christopher E. Dowd, Special Agent of the United States Fish and Wildlife Service, made misrepresentations in his affidavit supporting the application regarding observations made by other agents during a visit to defendant's Plantain Pond Road residence on January 21, 1995, five days prior to the issuance of the warrant.

On April 30, 1995, this court conducted an evidentiary hearing at which defendant's wife, Carolyn Romano, and two agents of the U.S. Fish and Wildlife Service, Patrick Bosco and Nancy E. Hillery, testified. In addition, the court viewed videotapes and photographs offered by both sides.

The court's findings with regard to what occurred on January 21, 1995 are set forth below. In general, the court has found the Government's rendition of these facts to be the more convincing.

On January 21, 1995, Agents Bosco, Hillery and a third agent, Garabedian, drove to the Romano residence. The plan was for Bosco and Hillery to go to the front door of the residence, posing as a husband and wife interested in real estate in the area. They hoped to engage the defendant Lawrence Romano in conversation to find out about his hunting activities and, if possible, get a look at a number of big game trophies they believed he had inside the house. At the time they approached the residence, the agents had received reliable evidence that Romano had been hunting illegally in Alaska, by em-

ploying a resident hunting license when he in fact resided in Massachusetts.

While Agent Garabedian remained in the car, Hillery and Bosco walked toward the front of the house. As they approached what they thought was the front door, they noticed a number of sets of caribou antlers in the area of a porch, in plain view. The antlers had airline tags and the tips had protective covers. One of the racks had a distinctive "double shovel" shape, which Agent Bosco recognized from a photograph he had received of the defendant with a dead caribou, shot in Alaska. *See* Government's Exhibit 6.

After redirecting their route upon realizing that the apparent front door was not in fact the door used by the Romanos, the agents knocked and Mrs. Romano came to a side door. After a brief discussion, Mrs. Romano invited the agents to step into the house. This is a contested fact, but I find in view of the cold day, the agents' version of events at this point is more credible. As soon as the agents entered the house they were able to observe a number of trophies, including a full mount brown bear, a Dall sheep shoulder mount, several white-tailed deer shoulder mounts and some elk or caribou antlers on display. After a brief conversation, the agents left. Evidence regarding the agents' observations was thereafter included in the January 26, 1995 search warrant application. The defendant, Lawrence Romano, was not at home during the time of the agents' visit and did not testify at the *Franks* hearing.

Based on the foregoing findings, the court holds that the agents committed no *Franks* violation in drafting and submitting the search warrant application on January 26, 1995 and, further, that the search pursuant to that warrant was fully supported by probable cause. The fruits of the January 26, 1995 search provided the basis for a further search warrant application, approved by Magistrate Judge Neiman on March 8, 1995, which in turn led to a second search. Given the solid foundation for the original search,

the items seized at the second search may properly be offered into evidence. The Motions to Suppress are therefore hereby DENIED.[1]

It is So Ordered.

---

1. Even if the court believed that somehow the agents entered the premises improperly and that therefore the fruits of this entry should be disregarded in assessing the probable cause supporting the application for the search warrant, the court would still find that the observations made by the agents of the tagged caribou antlers in plain view outside the house, in combination with the other facts contained in the search warrant application, would have been more than adequate to support probable cause for the January 26 search.